## UNITED STATES ex rel. DARCY v. SUPERINTENDENT OF COUNTY PRISONS OF PHILADELPHIA et al.

### No. 7287.

Circuit Court of Appeals, Third Circuit.

April 15, 1940.

Rehearing Denied May 13, 1940.

Louis F. McCabe and Philip Dorfman, both of Philadelphia, Pa., for appellant.

Franklin E. Barr, Asst. Dist. Atty., of Philadelphia, Pa., for Philadelphia.

Before MARIS, CLARK, and JONES, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District of Pennsylvania dismissing a writ of habeas corpus. The relator was indicted in California on September 6, 1935, for perjury under Section 118 of the Penal Code of that state [1] for having on March 27, 1934, given false answers when registering as a voter. It is averred in the indictment that the answers were false in that the relator gave his name as Sam Darcy instead of Samuel Dardeck and his place of birth as New York instead of the Ukraine, Russia. At the time of the indictment the relator was no longer in California, having left that state in June, 1935. On September 19, 1939, the relator was arrested in Philadelphia and on October 16, 1939, the Governor of California signed the requisition for extradition. On November 2, 1939, the Governor of Pennsylvania signed the warrant for the rendition of the relator to the agent of California. On the same day the relator was taken into custody by the respondents.

On November 3, 1939, the relator petitioned the district court for a writ of habeas corpus. The petition averred that the relator possessed all the qualifications necessary under the Constitution and laws of California to register and vote; that the statements even if false were immaterial and, therefore, not the subject of perjury; that the indictment and accompanying papers were fundamentally defective and did not substantially charge him with the commission of the crime of perjury; that prejudice existed against him because of his political beliefs and activities; that the prosecution and requisition were begun to punish him for his views and activities; that he was not subject to extradition under

---

[1] "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

the Constitution and laws of the United States and was unjustly deprived of his liberty without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. On November 30, 1939, the district court dismissed the writ and remanded the petitioner. The present appeal to this court is from that order.[2]

█ The right of the State of California to demand the rendition of the relator from the State of Pennsylvania is found in Article IV, Section 2, clause 2 of the Constitution of the United States.[3] This clause is not self executing but is made effective by Act of Congress.[4] The Supreme Court has construed this act as placing the burden upon the governor of the asylum state to determine, before complying with the demand, whether the person demanded is substantially charged with a crime and whether he is a fugitive from justice.[5] This determination may be made by the governor without a hearing, but if the alleged fugitive considers himself aggrieved by the order he may obtain a hearing upon writ of habeas corpus. The writ may be allowed either by a state or a federal court.[6]

 Here, as in Pierce v. Creecy, 210 U.S. 387, 401, 28 S.Ct. 714, 718, 52 L.Ed. 1113, "the only condition which it is insisted is absent is the charge of a crime". The issue in the present case is a narrow one, for the determination of whether the relat-

or is charged with a crime is entirely dependent upon whether the facts to which the relator took oath were material within the meaning of the California perjury statute previously quoted. We may accept the relator's argument that since under the law of California he was entitled to adopt and use any name without legal proceedings,[7] the statement that his name was Darcy was not untrue. However, the requisition papers clearly disclose that the relator's statement as to his birth place was in fact false. The relator argues that as a matter of law this statement is as to an immaterial fact, because had he told the truth he would nevertheless have been entitled to vote since the record discloses that he was a citizen by virtue of his father's naturalization during the relator's minority.

█ It may be that, insofar as the relator's right to vote is concerned, the outcome would have been the same had he told the truth. As to that right his misstatement as to his place of birth was perhaps immaterial inasmuch as he did possess the qualifications of a voter in California.[8] Was it immaterial for all purposes? We think not. The Registrar of Voters was entitled to any information which would enable him to purge the lists of those not entitled to vote. Let us suppose that the relator, having been listed as Darcy, a native born citizen, had then obtained a second listing as Dardeck, a native of the Ukraine, who had derived his rights of

---

[2] 28 U.S.C.A.Supp. § 463.

[3] "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

[4] Sec. 5278, Rev.Stat., 18 U.S.C.A. § 662: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which

such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. * * *"

[5] Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544; Munsey v. Clough, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515.

[6] Roberts v. Reilly, supra; Drew v. Thaw, 235 U.S. 432, 35 S.Ct. 137, 59 L. Ed. 302; Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L. Ed. 193; Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497.

[7] Ray v. American Photo Player Co., 46 Cal.App. 311, 189 P. 130; Emery v. Kipp, 154 Cal. 83, 97 P. 17, 19 L.R.A. N.S., 983, 129 Am.St.Rep. 141, 16 A Cas. 792.

[8] See Huston v. Anderson, 320, 78 P. 626.

citizenship through his father. The Registrar would thereby have been deprived of information to which he was entitled to enable him to determine whether the same person had registered twice. Or let us suppose some person, (other than the relator), not entitled to vote in his own right, was permitted to register as Dardeck, a native of the Ukraine, Russia. A fraudulent registration was thereby made possible by reason of the relator's misstatement. These suggestions are advanced for the sole purpose of illustrating that a misstatement, immaterial for some purposes, may be very material for others. Furthermore the misstatement was material if for no other reason than that the Registrar was thereby prevented from examining the authenticity of the document relied upon by the relator for proof of his derivative citizenship.

We conclude that the indictment substantially charged the crime of perjury within the meaning of the California perjury statute. It may be that in the California courts the relator may successfully attack the sufficiency of the pleadings or prevail upon a trial on the evidence. The duty of the court reviewing the status of the case upon habeas corpus is quite restricted. Mr. Justice Holmes, in Drew v. Thaw, 235 U.S. 432, 440, 35 S.Ct. 137, 139, 59 L.Ed. 302, said: "When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the governor of New York allege to be a crime in that state, and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of habeas corpus upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place." This statement epitomizes our conclusion in the present case and indicates why it is impossible for us to consider the relator's contention that his prosecution in California is pressed to punish him for his political views and activities rather than for the crime averred in the indictment. We may not inquire into the motive of the prosecution [9] nor assume that the courts of California will not afford the relator a fair trial free of passion and prejudice. Any other view would violate that spirit of comity which is essential to the operation of the courts in a federation such as ours.

The order is affirmed.

---

[9] People ex rel. Carr v. Murray, 357 Ill. 326, 192 N.E. 198, 94 A.L.R. 1487; Commonwealth v. Superintendent of County Prison, 220 Pa. 401, 69 A. 916, 21 L.R.A.,N.S., 939.